UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAFAYETTE SC, LLC,

                        Plaintiff,

v.                                                                                  Case # 14-CV-6284-FPG

                                                                                    DECISION & ORDER

CRYSTAL COAST INVESTMENTS, INC.
d/b/a Sparkman Construction,

                        Defendant.
_____

## INTRODUCTION

This case arises out of a contract between Plaintiff Lafayette SC, LLC ("Lafayette") and Defendant Crystal Coast Investments, Inc. d/b/a Sparkman Construction ("CCI") in which CCI agreed to perform construction services on property belonging to Lafayette in North Carolina. In its Amended Complaint, Lafayette alleges that CCI breached various provisions of the Agreement. ECF No. 6.

Presently before the Court is CCI's motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 7. Because Lafayette has failed to allege a sufficient basis for personal jurisdiction over CCI in this case, CCI's motion to dismiss under Rule 12(b)(2) for lack of jurisdiction is granted. The Court need not reach the merits of CCI's argument under Rule 12(b)(6).

## BACKGROUND[1]

CCI is a North Carolina corporation with its principal place of business in Raleigh, North Carolina. ECF No. 6, ¶2; ECF No. 7-6, ¶6. Lafayette is a New York limited liability corporation with its principal place of business in Pittsford, New York. ECF No. 6, ¶1.

On September 30, 2008, Lafayette and CCI entered into a Construction Management Agreement ("Agreement") in which CCI agreed to perform services as part of the construction of "Lafayette Village," a property owned by Lafayette in North Carolina. *Id.* at ¶7; ECF No. 6-2, Ex. A. All communications in connection with the negotiation of the Agreement were done by phone or email; Lafayette's counsel negotiated on behalf of Lafayette from New York, and CCI negotiated from North Carolina. ECF No. 6, ¶11; ECF No. 7-6, ¶¶24-25. The Agreement's choice-of-law provision stated that "the law of the place where the Project is located" shall govern, which was North Carolina. ECF No. 6-2, Ex. A, at 35.

CCI provided construction management services as part of the Lafayette Village project until June 2011. ECF No. 6, ¶7. During the course of the project, the parties engaged in further negotiations and discussions regarding upfits and warranty demands. *Id.* at ¶12. Again, all communications between the parties were done remotely; CCI maintains that the parties only communicated through phone or email and that no employee of CCI ever traveled to New York

---

[1] The following facts are taken from Lafayette's Amended Complaint (ECF No. 6) and the Declaration of William J. Sparkman, Vice President of CCI, which was submitted in support of CCI's motion to dismiss (ECF No. 7-6). Because at this stage of the litigation "we construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor," *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013), the only statements from the Sparkman Declaration that will be considered are those that do not conflict with the factual allegations in Lafayette's Amended Complaint.
    The memorandum of law submitted by Lafayette in opposition to CCI's motion to dismiss contains additional statements of "Relevant Facts" that were not alleged in the Amended Complaint. *See* ECF No. 9-1, at 7-9. The statements in this "Relevant Facts" section purport to be based on the following documents: "affidavit of Rob Galbraith," "affidavit of Kenneth Burnham," and "Notice of Appeal." *Id.* However, no such documents appear anywhere in the record. CCI pointed out this problem in the reply brief it filed on October 7, 2014, *see* ECF No. 10, at 2-3, but Lafayette has not supplied the missing documents or otherwise done anything to clarify the situation. This means the Court is left with only the unsworn statements in Lafayette's memorandum of law, which cannot be relied upon to make a *prima facie* case of personal jurisdiction. *Guo Jin v. EBI, Inc.*, No. 05CV4201, 2008 WL 896192, at *2 n.3 (E.D.N.Y. Mar. 31, 2008). The Court therefore disregards these statements. *Id.*

2

for business purposes, and Lafayette does not allege otherwise. ECF No. 7-6, ¶24-26. Lafayette does, however, point out that its own communications and payments "emanated" from New York. ECF No. 6, ¶12.

Under the Agreement, Lafayette was obligated to reimburse CCI for its expenses on a monthly basis. ECF No. 6, ¶¶ 14, 40. Although CCI failed to provide receipts or verification of its expenses, Lafayette nevertheless sent reimbursement money from New York to CCI in North Carolina. *Id.* at ¶14. Lafayette alleges that CCI breached the Agreement by collecting reimbursement payments from Lafayette in excess of the actual costs incurred by CCI. *Id.* at ¶¶ 15, 41.

On February 6, 2011, Lafayette sent CCI a "Notice of Major Construction Deficiency," citing problems with water intrusion into the buildings at Lafayette Village. *Id.* at ¶ 35. In addition, "[w]indows and doors were not installed in conformance with the [c]ontract documents, the plinth was clogged with stucco, preventing the drainage system from working, and the site was not kept clean and free from debris resulting in hundreds of holes in the roof." *Id.* These problems were allegedly caused by the failure of CCI to adequately manage, direct, and supervise the work that was being done on the Lafayette Village project. *Id.* However, CCI refused to do any corrective work. *Id.* Lafayette and CCI discussed problems with CCI's work "through a long series of many e-mails," but CCI "refused to honor" its contractual obligations and warranties under the Agreement. *Id.* at ¶36. As a result, Lafayette was forced to perform the corrective work and incur significant extra costs in doing so. *Id.* at ¶37-38.

## DISCUSSION

In New York, resolving an issue of personal jurisdiction involves a two-part inquiry into whether, given the circumstances of the case, (1) New York law confers jurisdiction by New York courts over the defendant, and (2) the exercise of jurisdiction over the defendant comports

with the Due Process Clause of the Fourteenth Amendment. *Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005). The plaintiff bears the burden of demonstrating both of these elements. *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013). To survive a motion to dismiss, a plaintiff need only make a "prima facie showing that jurisdiction exists." *Id.* (quoting *Penguin Group (USA) Inc. v. American Buddha ("Penguin I")*, 609 F.3d 30, 34 (2d Cir. 2010)).

Personal jurisdiction is commonly separated into two categories. First, a court may exercise specific jurisdiction over a defendant on the basis of the defendant's in-state activities connected to the litigation. *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). Second, a court may exercise general jurisdiction over a defendant when the defendant's contacts with the forum state are so extensive as to render the defendant "at home" in that forum state, regardless of whether any of the defendant's in-state activities are relevant to the litigation. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754, (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

Here, Lafayette has failed to meet its burden of alleging sufficient facts to make a *prima facie* showing of personal jurisdiction; New York law does not confer specific jurisdiction over CCI in this case, and the exercise of general jurisdiction over CCI would not comport with the requirements of constitutional due process.

1. **Specific Jurisdiction**

New York's long-arm statute, New York Civil Practice Law and Rules ("C.P.L.R.") § 302, authorizes New York courts to exercise personal jurisdiction over a non-domiciliary defendant if the defendant has committed one of the four acts enumerated in the statute and the plaintiff's cause of action arises out of that act. N.Y. C.P.L.R. § 302(a). The Court will address each of those four acts in turn.

*C.P.L.R. § 302(a)(1)*

C.P.L.R. § 302(a)(1) authorizes personal jurisdiction over a defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state." Because the Agreement between Lafayette and CCI provided for CCI to perform construction services in North Carolina, and it is undisputed that CCI did not contract to supply any goods or services within New York, the second half of § 302(a)(1) does not apply. Therefore, the relevant question in this case is whether CCI "transact[ed] any business" within New York.

In determining whether certain conduct qualifies as transacting business within New York for the purpose of § 302(a)(1), the New York Court of Appeals has explained that the "overriding criterion" is some purposeful act by which the defendant avails itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of New York laws. *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508 (2007); *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007). Although proof of a single act may be sufficient to invoke jurisdiction, *Deutsche Bank Sec., Inc. v. Montana Bd. of Investments*, 7 N.Y.3d 65, 71 (2006), not all purposeful activity is sufficient to constitute a "transaction of business" in New York within the meaning of § 302(a)(1). *Fischbarg*, 9 N.Y.3d at 380. The quality of the defendant's contacts with New York, rather than the quantity, is the primary consideration. *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 378 (2014); *Fischbarg*, 9 N.Y.3d at 380.

Where an out-of-state defendant enters into a contractual relationship with a New York plaintiff, courts have identified the following four factors as relevant to the question of whether the defendant has transacted business in New York: (i) whether the defendant has an on-going contractual relationship with the New York plaintiff; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding

5

the relationship; (iii) what the choice-of-law clause is in the contract; and (iv) whether the contract requires franchisees to send notices and payments into New York or subjects them to supervision by a corporation in New York. *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996).

Although all four factors are relevant, none are dispositive and other factors may also be considered. *Id.* For example, whether the contract is to be performed inside or outside of New York "is of great significance." *Navaera Scis., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 376 (S.D.N.Y. 2009). Ultimately, the determination is based on the totality of the circumstances in each case. *Agency Rent A Car*, 98 F.3d at 29.

Here, CCI's contacts with New York—as alleged by Lafayette—are not enough to make a *prima facie* showing that jurisdiction exists under § 302(a)(1). CCI entered into a contractual relationship with Lafayette, a New York LLC, from September 2008 to June 2011. But the Agreement between Lafayette and CCI, which provided for CCI to perform services in North Carolina as part of a construction project on property owned by Lafayette in North Carolina, is fundamentally and inextricably tied to North Carolina. CCI's performance occurred entirely outside of New York, and it is undisputed that CCI never traveled to New York during the negotiation, execution, or performance of the Agreement. The Agreement's choice-of-law clause, which provided that the Agreement shall be governed by the law of North Carolina, further belies any suggestion that CCI invoked the benefits or protections of New York law. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) (stressing the importance of choice-of-law clauses in determining whether a defendant has invoked the benefits and protections of New York law).

Lafayette points to the significant number of communications sent by CCI to Lafayette during the negotiation and performance of the Agreement. ECF No. 9-1.[2] Although physical entry into New York is not necessary where the defendant uses technology to "project" itself into New York to conduct a business transaction, *see Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 18, (1970), there is nothing to suggest that CCI projected itself into New York by negotiating and communicating with Lafayette about the construction project in North Carolina. On the contrary, given the Agreement at issue in this case, it would be much more accurate to characterize the communications between Lafayette and CCI by stating that *Lafayette projected itself into North Carolina* to conduct the transaction.

Where the "center of gravity" of a transaction is outside of New York, communications and even a visit to New York are much less likely to provide the type of purposeful contact necessary to sustain jurisdiction under § 302(a)(1). *Pincione v. D'Alfonso*, 506 F. App'x 22, 25 (2d Cir. 2012) (holding that the defendant's visit to New York and numerous communications to a New York entity, which were "intended to facilitate a business deal in Italy," were insufficient because such contacts "cannot transform this fundamentally Italian deal into a New York business transaction."); *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) ("[C]ommunications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its 'center of gravity' inside New York, into which a defendant 'projected himself.'"); *see also Wilhelmshaven Acquisition Corp. v. Asher*, 810 F. Supp. 108, 113 (S.D.N.Y. 1993). The center of gravity of the transaction in this case was undeniably North Carolina, given that the Agreement provided for CCI to perform services

---

[2] Lafayette also points to connections between *Lafayette* and New York, such as the fact that Lafayette's lawyer is located in New York, Lafayette's payments and other communications to CCI "emanated" from New York, and Lafayette allegedly suffered injury in New York. ECF No. 6. Although Lafayette's presence in New York is relevant to the jurisdictional analysis, "it is *the defendant's conduct* that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (emphasis added).

solely in North Carolina as part of a North Carolina construction project. *See U.S. Theatre Corp. v. Gunwyn/Lansburgh Ltd. P'ship*, 825 F. Supp. 594, 596-97 (S.D.N.Y. 1993).

Because the quality of CCI's contacts with New York does not suggest any purposeful decision to transact business in New York, § 301(a)(1) cannot form the basis of personal jurisdiction over CCI in this case.

### *C.P.L.R. § 302(a)(2)*

C.P.L.R. § 302(a)(2) applies if the defendant "commits a tortious act within the state." Here, however, Lafayette's claims against CCI are based solely on CCI's alleged failure to abide by the terms of a contract between the parties. ECF No. 6, at 5-9.[3] Without any allegations of tortious conduct, Lafayette may not rely on § 302(a)(2) as a basis for personal jurisdiction over CCI in this case. *Amigo Foods Corp. v. Marine Midland Bank-New York*, 39 N.Y.2d 391, 396 (1976); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784-85 (2d Cir. 1999); *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 332-33 (S.D.N.Y. 2015).

### *C.P.L.R. § 302(a)(3)*

Similarly, C.P.L.R. § 302(a)(3) applies if the defendant "commits a tortious act without the state causing injury to person or property within the state." Again, Lafayette may not rely on this basis for jurisdiction because its claims against CCI are rooted in contract, not in tort. *Amigo*, 39 N.Y.2d at 396.

### *C.P.L.R. § 302(a)(4)*

Lastly, C.P.L.R. § 302(a)(4) applies if the defendant "owns, uses or possesses any real property situated within the state." Because Lafayette has not alleged any connection between

---

[3] In its opposition to CCI's motion to dismiss, Lafayette confusingly asserts that its Amended Complaint "sounds in both tort and [c]ontract." ECF No. 9-1, at 10. The three claims in the Amended Complaint are for "breach of warranty," "overbilling of expenses," and "contractor's failure to clean up." ECF No. 6, at 5-9. For each claim, Lafayette quotes a provision from the Agreement and then proceeds to allege that CCI violated the terms of that provision. *Id.* Although conduct that breaches a contract may also rise to liability in tort when the conduct "breaches a legal duty which exists independent of contractual relations between the parties," *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir. 1980) (internal quotations omitted), this is clearly not that case.

CCI and real property in New York, much less any connection between such property and this case, § 302(a)(4) is inapplicable. *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 390 (E.D.N.Y. 2015).

### 2. General Jurisdiction

The Supreme Court, in *Daimler AG v Bauman*, recently clarified the standard for determining whether a state may exercise general jurisdiction over a foreign corporation. The correct inquiry is not simply whether the corporation's contacts with the forum can be classified as "continuous and systematic," but whether the corporation's affiliations with the forum "render it essentially at home in the forum State." *Daimler AG*, 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851). A corporation is generally "at home" where it is incorporated and where it has its principle place of business. *Id.* at 760.

Here, CCI is a North Carolina corporation with its principle place of business in Raleigh, North Carolina. ECF No. 6, ¶2; ECF No. 7-6, ¶6. Although the Court in *Daimler AG* left open the possibility that "in an exceptional case" a corporation's contacts with a state other than its formal place of incorporation or principle place of business "may be so substantial and of such a nature as to render the corporation at home in that State," *Daimler AG*, 134 S. Ct. at 761 n.19, CCI's contacts with New York do not even begin to approach that level. It is undisputed that CCI has never performed any construction projects in New York, does not own or maintain any facility or office in New York, does not advertise in New York, and is not authorized to do business in New York. ECF No. 7-6, Sparkman Decl. at ¶¶ 8-20. CCI cannot conceivably be considered "at home" in New York. *Daimler AG*, 134 S. Ct. at 761.

### 3. Jurisdictional Discovery

To obtain jurisdictional discovery, the plaintiff must make "a threshold showing that there is some basis for the assertion of jurisdiction." *Sayles v. Pac. Eng'g & Constructors, Ltd.*,

No. 08CV676S, 2012 WL 895944, at *4 (W.D.N.Y. Mar. 15, 2012). "Where plaintiffs do not establish a prima facie case that the district court has jurisdiction over the defendant, the district court does not err in denying jurisdictional discovery." *Chirag v. MT Marida Marguerite Schiffahrts*, 604 F. App'x 16, 18-19 (2d Cir. 2015) (citing *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 186 (2d Cir.1998)). "A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Id.* at 19.

Lafayette has not made a sufficient showing to warrant jurisdictional discovery. Lafayette was put on notice of the personal jurisdiction issue in this case when CCI filed a motion to dismiss the original complaint for lack of personal jurisdiction, *see* ECF No. 3, and yet the Amended Complaint still lacks sufficient factual allegations from which the Court could conclude that discovery would be fruitful. It is also important to note that these parties are far from unfamiliar with each other, having already litigated a dispute in North Carolina state court regarding the very same contract at issue in this case. ECF No. 6, at ¶9. Because Lafayette has failed to make a threshold showing that the exercise of personal jurisdiction over CCI in this case may be appropriate, jurisdictional discovery is not warranted.

## CONCLUSION

For the reasons stated above, CCI's motion to dismiss (ECF No. 7) is GRANTED. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: March 28, 2016
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court